# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

JOSEPH H. SPARKS, III,

     Petitioner,

v.                                         No. 2:14cv440

HAROLD CLARKE,
Director, Virginia Dep't of Corrections

     Respondent.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Joseph Sparks, III ("Sparks") is a Virginia inmate currently serving a 16-year active sentence following convictions in 2009 for aggravated sexual battery, taking indecent liberties, forcible sodomy, and object sexual penetration. Sparks filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which alleges three claims all related to the ineffectiveness of his trial and sentencing counsel. Respondent moved to dismiss, and the matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure.

Because Sparks has failed to overcome the high standard of review set forth in 28 U.S.C. § 2254(d) and Strickland v. Washington, 466 U.S. 668 (1984), as set forth in detail below, the undersigned recommends that the court GRANT Respondent's motion (ECF No. 4), and DISMISS the petition.

# I. STATEMENT OF THE CASE

A Virginia grand jury sitting in Norfolk indicted Sparks on charges of aggravated sexual battery, taking indecent liberties, forcible sodomy, and object sexual penetration in September 2009. The charges related to an incident in which Sparks was alleged to have touched his four-year old daughter, A.S.'s genitals with his tongue. Sparks admitted that the act occurred, but denied penetrating A.S.'s genitals or having lascivious intent. The Commonwealth attempted to prove penetration and intent through A.S's testimony and Sparks' previous statements to police. At a bench trial and over objections to her competency by Sparks' trial counsel, A.S. testified that "my dad licked my vagina." Commonwealth v. Sparks, No. CR09002723-00, Trial Tr. at 72 (Norfolk Cir. Ct. Dec. 10, 2009).

Ultimately, the court found Sparks guilty of all four charges on December 10, 2009. The court continued the matter twice for sentencing and to reconsider its finding on penetration. Sparks retained new counsel, and on July 23, 2010, the Court found sufficient evidence of penetration and imposed sentence as follows: on forcible sodomy sixty (60) years' imprisonment with forty-four (44) suspended; on object sexual penetration forty (40) years with forty (40) suspended; on aggravated sexual battery twenty (20) years with twenty (20) suspended; and on indecent liberties five (5) years with five (5) suspended, leaving an active sentence of sixteen (16) years.

Sparks filed a petition for appeal with the Court of Appeals of Virginia to challenge his convictions for sufficiency of the evidence. It denied his petition for appeal, and he filed a petition with the Supreme Court of Virginia. The Supreme Court refused his petition on November 10, 2011.

Thereafter, through his current counsel, Sparks filed a petition for a writ of habeas corpus in the Circuit Court of the City of Norfolk on November 7, 2012. Sparks argued that his trial counsel was constitutionally ineffective and that the Commonwealth violated his due process rights under Brady v. Maryland, 373 U.S. 83 (1963), Napue v. Illinois, 360 U.S. 264 (1959), and Giglio v. United States, 405 U.S. 150 (1972). The court held an evidentiary hearing and denied the petition from the bench. Sparks filed a petition for appeal with the Supreme Court of Virginia, and it refused the petition initially and upon a request for rehearing by final order dated June 13, 2014. Sparks filed the present petition, again with the assistance of counsel, pursuant to 28 U.S.C. § 2254, on August 25, 2014. In his federal petition, Sparks raises three Sixth Amendment claims of ineffective assistance of counsel, all of which were presented to the Virginia habeas court and relate to the facts outlined below.

## A. Fanny Sparks' Testimony

The Commonwealth offered the testimony of Sparks' former wife and A.S.'s mother, Fanny Sparks ("Mother") to prove the underlying criminal conduct. Sparks and Mother finalized their divorce soon after the sexual abuse allegations against A.S. arose. Mother testified that A.S. told her that Sparks "put his tongue on my cocita."[1] Trial Tr. at 41. She also denied making statements that Sparks claimed she did, i.e., telling Sparks that there was redness or irritation on A.S.'s genitals that he should "keep an eye on." Id. at 181. Mother also testified that A.S. stated that "there was paper on my cocita. Daddy couldn't take it out with his fingers, so he did it with his tongue." Id. at 41.

In his petition, Sparks alleges that there were several reasons to question the credibility of Mother as a witness. Pet. at 5 (ECF No. 1, at 7). He alleges that she may have entered her

---

[1] Mother testified that "cocita" is a Spanish word that Mother and A.S. use for "vagina." Trial Tr. at 46-47.

marriage with Sparks fraudulently in order to secure her immigration status. He alleges that she made several false allegations of spousal abuse against Sparks in the past. And, he alleges that Mother misrepresented prior legal proceedings in their divorce case. The divorce proceedings were allegedly contentious. Sparks also alleges that his then-girlfriend, Patricia Moyer, could have provided contradictory testimony about the existence of a rash. See id.

At the habeas hearing, trial counsel testified that his decision not to attempt to impeach Mother on the past allegations was a strategic decision. Sparks v. Warden, No CL12-7731 (Norfolk Cir. Ct.) Tr. at 18-29. Trial counsel testified that he felt that impeaching Mother would "detract" from his trial objective to argue lack of penetration and lascivious intent. Id. at 18. He also thought that the prejudice that could arise from introducing collateral evidence of Sparks and Mother's previous legal proceedings[2] as prior bad acts by Sparks would outweigh the probative value it may garner in attacking Mother's credibility. Id. at 17. Trial counsel's primary focus was overcoming the "major hurdle" created with Sparks' inculpatory and apologetic confession. Id. at 18. Trial counsel also expressed his concern that he felt Sparks' girlfriend, Ms. Moyer, could not withstand cross examination based on his in-office interview with her. Id. at 25, 35, 39.

### B. Myriam Goldin's Expert Testimony

At the underlying trial, the Commonwealth also elicited testimony from Myriam Goldin who worked "for Fairfax County Public Schools as a school social worker for an alternative high school, and . . . as a contractor doing therapy for Child Health." Trial Tr. at 117. The Commonwealth appears to have offered her testimony about play therapy with A.S. to attempt to prove the underlying act and Sparks' criminal intent by showing a traumatic effect on A.S. After

---

[2] Sparks points to his prior acquittal of domestic violence charges brought on Mother's allegations in 2005 and evidence of the Loudon County Juvenile and Domestic Relations Court's refusal to grant Mother a "protective order" as relief for alleged spousal abuse in 2007.

she was called at trial and the prosecutor began laying a foundation for her expert testimony, the following exchange took place:

> Sparks' Trial Counsel: Your Honor, this is the expert who testified about the closed circuit. Correct? So I'm going to stipulate. I'm going to stipulate to her credentials. With Judge Leafe, she's already gone through her credentials once on the record and so I'm not going to object to any of the credentials that have been offered.
>
> The Court: Okay.
>
> Prosecutor: Are you stipulating she is qualified to testify as an expert in the area of counseling for children who have been subject to trauma?
>
> Sparks' Trial Counsel: I'm going to raise the same objection in the Fitzgerald case because she's a licensed social worker. I'll stipulate to her education.

Trial Tr. at 118-19. Trial counsel later objected to Ms. Goldin's expert testimony and argued that Ms. Goldin could not testify about any diagnosis and treatment administered to A.S. because she did not meet the definition of a "counselor" under the Code of Virginia. Id. at 121-22, 124. Rather, he argued, she was a social worker and thus did not meet the Virginia evidentiary standard for expert testimony. Id. After argument of counsel, the court made it clear that it was not going to sustain trial counsel's objection and he eventually withdrew the objection. Id. at 128. Trial counsel then made valid hearsay objections to Ms. Goldin's testimony, id. at 128-29, and conducted cross-examination of Ms. Goldin. Id. at 131-34. Ms. Goldin testified about symptoms that A.S. exhibited through play therapy based on Ms. Goldin's observations. She concluded that A.S. suffered from traumatic stress. Id. at 131.

At the habeas hearing, trial counsel testified that he conducted some internet research on play therapy "and had dealt with play therapy in other cases." Habeas Tr. at 22-23. Trial counsel testified that he "made the objections that [he] felt were appropriate during the trial." Id. at 24. Also at the habeas hearing, Ms. Goldin testified about the process and theory of play

therapy. Id. at 48-52. She testified that play therapy is not considered an "evidence-based practice yet." Id. at 58. She also testified that in December 2009 she was not a registered play therapist. Id. at 60.

## C. Information Relating to Expunged Records Offered at Sentencing

Sparks retained new counsel for sentencing. Id. at 69. Sentencing counsel moved to strike evidence contained in the presentence report of prior Maryland charges against Sparks for inappropriate touching of a minor in 2002. Sentencing Tr. (July 23, 2010), at 15. Sentencing counsel argued that because Sparks had been acquitted and the charge expunged, the court should not consider it for purposes of imposing sentence. Id. at 16. Sentencing counsel's argument was based solely on the fact that the records had been expunged, while conceding that the fact that charges had been filed against Sparks carried some minor relevance for sentencing. Id. at 22. While the state court records had been expunged, Sparks also had made certain statements about the 2002 incident to the Navy during its evaluation of whether he should retain his security clearance after the incident. Id. at 25. After hearing argument from counsel, the court held that it would exclude Sparks' statements to law enforcement based on the 2002 incident, but that it would consider Sparks' statements to the Navy concerning the incident. Id. at 26.

## D. The State Habeas Court's Ruling

The state habeas court ruled on Sparks' petition from the bench. It recognized the ease with which a petitioner can "Monday morning quarterback" trial counsel's choices and the objective standard it applied: "whether or not the actions fall below an objective standard under prevailing professional norms." Habeas Tr. at 107-08. The court held that trial counsel's choice to focus on what he felt were the meritorious issues – penetration and lascivious intent – was

"more than reasonable under the circumstances of this case." Id. at 110. The court held that indeed the decision made by trial counsel to not impeach Mother with past allegations against Sparks was "the type of call that trial counsel routinely make . . . ." Id. In addition to finding no deficient performance by trial counsel, the court held that no prejudice resulted to Sparks from trial counsel's lack of impeachment either by not introducing the past accusations or by not calling Sparks' girlfriend to testify. Id. at 111. The court noted that Mother "wasn't the crucial witness that the petitioner wants to assert that she was." Id. at 110-11.

The court also found no prejudice stemming from trial counsel's failure to articulate a different objection to Ms. Goldin's testimony because "the testimony of Ms. Goldin in no way factored into the Court's reasoning in this matter." Id. at 115. Lastly, "[w]ith regards to the expunged records, the Court [did] not accept Petitioner's position that the objections of relevance and prejudice should have been made." Id. Precisely, the court held that had those objections been made, it would have overruled them because the statements were relevant to fashioning an appropriate sentence. Id. The Supreme Court of Virginia refused Sparks' petition for appeal, and thus, the Circuit Court's explanation from the bench constitutes the last reasoned state court decision. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

## II. RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Exhaustion and the Standard of Review

Petitions for a writ of habeas corpus that challenge a state's custody over a petitioner must show that such custody violates the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Before seeking federal habeas relief, however, a petitioner must first exhaust the remedies available in state court or demonstrate the absence or ineffectiveness of such remedies. 28 U.S.C. § 2254(b)(1). Therefore, before a state prisoner can seek federal

habeas relief, he must first give the state court an opportunity to consider alleged constitutional errors occurring in the prisoner's state trial and sentencing. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). "To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997); see Picard v. Connor, 404 U.S. 270, 275-76 (1971). Respondent concedes, and the Court agrees, that for purposes of federal review, Sparks' claims have been exhausted. (ECF No. 5, at 4).

Once a petitioner's state remedies have been exhausted, under the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant relief on any claim adjudicated on the merits by the state court, unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law" or "resulted in a decision that was based on an unreasonable determination of the facts." 28 U.S.C. §§ 2254(d)(1)-(2). A state court's adjudication is contrary to clearly established federal law if the court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court unreasonably applies clearly established law if it identifies the correct legal principle, but unreasonably applies it to the facts of the case. Id. at 413. Factual determinations made by a state court, however, are "presumed to be correct," and a habeas petitioner has the burden of rebutting that presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see Hill v. Ozmint, 339 F.3d 187, 194 (4th Cir. 2003).

All three of Sparks' claims assert that he was denied his Sixth Amendment right to effective counsel.[3] Each of these claims was resolved on the merits by the Supreme Court of

---

[3] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amt. VI.

Virginia. Thus, to obtain relief in this Court, Sparks must overcome the standard set forth in §

2254(d). In reviewing an ineffective assistance of counsel claim, the relevant inquiry is whether

"counsel's unprofessional errors so upset the adversarial balance between defense and

prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v.

Morrison, 477 U.S. 365, 374 (1986). However, this presumption is not easily overcome, as

"counsel is strongly presumed to have rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment." Strickland v. Washington, 466

U.S. at 687.

In order for Sparks to succeed on his ineffectiveness claims, he must satisfy both the

"performance" and the "prejudice" prongs of the two-part test set forth in Strickland v.

Washington, 466 U.S. at 687.[4] To satisfy the "performance" prong of the test, petitioner must

show that "counsel's representation fell below an objective standard of reasonableness" such that

he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment." Id. To satisfy the "prejudice" prong of the test, petitioner

must prove that "there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different." Id. at 694.[5]

Because the Supreme Court of Virginia rejected Sparks' claims, review in this Court is

doubly deferential. See Burr v. Lassiter, 513 F. App'x 327, 340 (4th Cir. 2013) (unpublished)

---

[4] As both prongs of the test are "separate and distinct elements" of an ineffective assistance claim, Sparks must satisfy both requirements of the test to prevail on the merits. Spencer v. Murray, 18 F.3d 229, 232-33 (4th Cir. 1994); see Strickland, 466 U.S. at 697. Likewise, the court can address the elements in any order. Additionally, the court reviews alleged errors of counsel individually, not cumulatively. Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir. 1998).

[5] The Supreme Court has defined a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; Lovitt v. True, 403 F.3d 171, 181 (4th Cir. 2005).

9

("[W]here the issue is whether the state court has unreasonably applied Strickland standards to an ineffective assistance of counsel claim, 'double deference' is required – deference to the state court judgment granting deference to trial counsel's performance."); see also Yarborough v. Gentry, 540 U.S. 1, 6 (2003). As the Fourth Circuit has noted, "[i]f this standard is difficult to meet, that is because it was meant to be," and "even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." Burr, 513 F. App'x at 341 (quoting Harrington v. Richter, 131 S. Ct. 770, 786 (2011)).

### B. The State Habeas Court's Conclusion that Trial Counsel's Failure to Impeach Mother Was Not Constitutionally Deficient Was Not Contrary to, or an Unreasonable Application of, Clearly Established Federal Law.[6]

Sparks argues that trial counsel rendered ineffective assistance by failing to investigate and offer impeachment evidence of Mother. Specifically, he argues that important documents from their divorce proceedings and past domestic violence allegations would have shown her bias and propensity to lie. Sparks also argued that trial counsel should have called Ms. Moyer to rebut Mother's testimony about the alleged rash on A.S. See Pet. at 17 (ECF No. 1, at 19). Sparks argues that the state habeas court erred in its assessment of his claim because trial counsel's failure to impeach could not be based on a strategic decision. Rather, it resulted from a preliminary and more fundamental failure to investigate and obtain the documents whose

---

[6] Respondent argues, and Sparks takes issue with in his Reply, that the state habeas court's conclusions on the prejudice prong of Strickland was a factual finding. See Resp't's Br. (ECF No. 5, at 15, 16, 18); Pet'r's Reply at 2-3 (ECF No. 6, at 3-4). Although the distinction is largely irrelevant because the ultimate standard is one of reasonableness, see 28 U.S.C. § 2254(d)(1) ("unreasonable application of, clearly established federal law"); id. § 2254(d)(2) ("unreasonable determination of the facts"), the undersigned agrees with Sparks that the bulk of the state habeas court's conclusions were not factual findings, but legal conclusions. Moreover, as Sparks points out in his Reply, the factual record is mostly not in dispute. Pet'r's Reply at 3 (ECF No. 6, at 4 n.1). Thus, because it does not appear that the Supreme Court of the United States has ruled on "a set of materially indistinguishable facts," to invoke the "contrary to" federal law question, the undersigned will apply the most appropriate standard and the one primarily argued by Sparks: whether the state habeas court "unreasonably applied" the governing legal principle from Supreme Court decisions to the facts. Bell v. Cone, 535 U.S. 685, 694 (2002). To the extent that Sparks argues that the state habeas court made a factual determination when it found that trial counsel's failure to impeach Mother was a strategic decision, the undersigned finds that state court did not render a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," e.g., trial counsel's testimony. § 2254(d)(2).

impeachment value would have likely changed the outcome of the trial. See Pet. at 16 (ECF No. 1, at 18) (citing Tucker v. Ozmint, 350 F.3d 433, 444-45 (4th Cir. 2003)). He argues that trial counsel's failure to pursue the line of impeachment he now suggests with a crucial witness should have undermined the state habeas court's confidence in the outcome.

Respondent argues that trial counsel's strategy was reasonable under the circumstances. He noted that Sparks has failed to demonstrate that Sparks ever made the past divorce documents available to trial counsel or made trial counsel aware of Mother's misrepresentation in the divorce discovery. Resp't's Br. (ECF No. 5, at 11). As a result, Respondent argues, Sparks fails to challenge trial counsel's conduct on the then-existing circumstances. Id. (citing Harrington v. Richter, 131 S. Ct. 770., 789 (2011)). Rather, Sparks makes a post hoc attack on trial counsel's strategy and decisions.

Trial counsel for the accused "ha[s] an obligation to investigate possible methods for impeaching a prosecution witness, and failure to do so may constitute ineffective assistance of counsel." Tucker, 350 F.3d at 444 (citing Huffington v. Nuth, 140 F.3d 572, 580 (4th Cir. 1998)). Again, objective reasonableness is the touchstone of the inquiry into counsel's performance. See Huffington, 140 F.3d at 580. And in turn, "the reasonableness of the investigation depends, in part, upon the importance of the witness to the prosecution's case." Tucker, 350 F.3d at 444. If counsel fails to investigate "a witness who has been identified as crucial," then that "may indicate an inadequate investigation." Huffington, 140 F.3d at 580 (quoting Gray v. Lucas, 677 F.2d 1086, 1093 n.6 (5th Cir. 1982)). As the Fourth Circuit noted in Huffington and in Tucker, "most of the witnesses whom federal courts have deemed 'crucial' were 'alibi witnesses or eyewitnesses critical to the determination of guilt,' such as self-defense witnesses." Tucker, 350 F.3d at 444 (quoting Huffington, 140 F.3d at 580). However, "[p]ost-

conviction counsel's backward-looking characterization of the role of any particular witness should have no bearing on this question." Tucker, 350 F.3d at 444 n.7 (citing Strickland, 466 U.S. at 689-90 (cautioning reviewing courts to evaluate trial counsel's performance "as of the time of counsel's conduct")).

The circumstances here are similar to those in Tucker. There, the court held that trial counsel's failure to investigate the disciplinary action taken against a practicing medical doctor by the licensing board was not constitutionally deficient representation. 350 F.3d at 444-45. The doctor had testified as a government witness to rebut the defendant's claim that his psychological disorder warranted leniency in sentencing. Id. Therefore, the court deemed him not a "crucial" witness under Huffington. Id. at 444. The court also pointed out that trial counsel did in fact attempt to impeach the doctor and exclude his testimony through the doctor's admission that he had never examined the defendant. Id. at 445. That trial counsel failed to discover the doctor's probationary status for practicing medicine did not render his assistance constitutionally ineffective.

Similarly, Sparks' argument that trial counsel's impeachment investigation was deficient fails to overcome the stout deference this court must give to both trial counsel's strategic decision and the state habeas court's constitutional review.[7] See Burr, 513 F. App'x at 340. First, trial counsel's decision to refrain from introducing extrinsic evidence to impeach Mother's credibility based on past allegations of Sparks' acts of domestic violence was not below the objective performance standard employed by Strickland. It was well within trial counsel's trial

---

[7] The focus is on the state habeas court's ultimate decision because "satisfying the § 2254(d)(1) standard "does not require citation of [Supreme Court] cases-indeed, it does not even require awareness of [these] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Lenz v. Washington, 444 F.3d 295, 307 (4th Cir. 2006) (emphasis in original) (quoting Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)).

strategy and discretion to forego the tangential attack on Mother's corroboration of A.S.'s testimony[8] in order to avoid putting Sparks' alleged prior bad acts before the court and to avoid losing the court's focus on the Commonwealth's failure to prove penetration and lascivious intent. See Strickland, 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (citation omitted)).

Moreover, Sparks' argument that trial counsel failed to conduct a reasonable investigation of Mother's past allegations and the divorce proceedings is not supported by the record. Indeed, trial counsel spoke with Sparks' divorce counsel in Northern Virginia "on several occasions," was aware of the prior domestic violence allegations and proceedings, and obtained the documents pertaining to those allegations. Habeas Tr. at 14, 17. In his own reasonable estimation, trial counsel felt that the evidence of Mother's past allegations did not unequivocally show her to be untruthful. Id. at 21 ("I understand that he was found not guilty, and the protective order was not granted, but there was no indication that she had lied, just that the evidence was insufficient."). Indeed, Sparks' prior acquittal in the face of Mother's allegations does not make her allegations patently false. Similarly, Mother's misrepresentation about the past protective order in her answers to divorce interrogatories is too minimal to conclude that trial counsel's decision not to pursue it fell below objectively reasonable professional standards. Further, as he testified in the state habeas proceeding, trial counsel discussed all of the above considerations with Sparks. Id. at 21. Finally with respect to trial counsel's performance, he did cross-examine Mother, albeit briefly, about the divorce and the

---

[8] The Virginia Rules of Evidence carry a hearsay exception in certain criminal prosecutions for recent complaints of sexual assault solely for the purpose of "corroborating the testimony of the complaining witness." See Va. Sup. Ct. R. 2:803(23).

fact that the allegations that gave rise to Sparks' underlying charges arose before the divorce was final. Trial Tr. at 45.

Second, the state habeas court's conclusion that trial counsel's decision did not fall below objectively reasonable professional standards is a reasonable application of federal law. As outlined above, the Strickland performance prong requires that trial counsel "made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. The state habeas court found that trial counsel's decision was an objectively reasonable one. The court held that trial counsel's choice to focus on what he felt were the meritorious issues – penetration and lascivious intent – was "more than reasonable under the circumstances of this case." Habeas Tr. at 110. At bottom, the state habeas court at least made "a reasonable argument that counsel satisfied Strickland's deferential standard" which is all that is required to preclude federal habeas relief under § 2254(d). Richter, 131 S. Ct. at 788.

Additionally, the state habeas court went on to hold that even if trial counsel did commit errors, it resulted in no prejudice to Sparks. Much like the doctor in Turner, Mother "wasn't the crucial witness that the petitioner wants to assert that she was." Habeas Tr. at 110-11. The court indicated that Mother's testimony was just one of many factors it considered in making its findings on guilt. Habeas Tr. at 112. It concluded that no prejudice resulted from trial counsel's failure to offer Ms. Moyer or introduce the extrinsic impeachment evidence from the past allegations. Indeed the state habeas court, as the trial fact finder, was in a position to assess its confidence in the outcome of the case. Thus, it reasonably determined that there was not a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see 28 U.S.C. 2254(d)(1).

Because the state habeas court did not unreasonably apply clearly established federal law, Sparks has failed to state a claim for habeas relief in this court. Therefore, the undersigned recommends that the court dismiss Sparks' first claim.

### C. The State Habeas Court's Conclusion that Trial Counsel's Failure to Articulate a Different Objection to Ms. Goldin's Testimony Was Not Constitutionally Deficient Was Not Contrary to, or an Unreasonable Application of, Clearly Established Federal Law.

Sparks next argues that his trial counsel was constitutionally ineffective because he objected to Myriam Goldin's testimony on the grounds that she was not qualified as an expert on treating mental disorders, but failed to object on other grounds – namely, relevance. [9] See Trial Tr. at 121-23. In his petition, Sparks outlines the standard for admitting expert testimony and its relevance requirement. See Pet. at 22 (ECF No. 1, at 24). He argues that Ms. Goldin's testimony, ostensibly offered to prove that A.S. suffered some traumatic experience, was not relevant evidence. Because Sparks admitted that the underlying act occurred, there was no factual dispute about the event's occurrence. As such, Sparks argues, the only remaining factual issues in the case, penetration and his intent, could not be proven by Ms. Goldin's testimony about the effect on A.S. Therefore, trial counsel should have objected on that ground. Sparks argues trial counsel's failure to do so deprived Sparks of his Sixth Amendment right to counsel. Although relevance may have very well been a valid or even successful additional objection, the

---

[9] Sparks also points to two other alleged deficiencies in trial counsel's performance in support of this claim. One, Sparks argues that trial counsel was inadequate by failing to object to Ms. Goldin's testimony on the ground that play therapy was not a scientifically reliable practice. See Pet. at 25 (ECF No. 1, at 27). This argument is unpersuasive in light of Strickland's prejudice prong because the state habeas court made clear that Ms. Goldin's testimony did not contribute to the trial court's ruling. Because of the minimal value of Ms. Goldin's testimony, Sparks suffered no prejudice from trial counsel's alleged failure. Two, Sparks argues that trial counsel failed to argue that Ms. Goldin was not qualified to testify as an expert. See Pet. at 27 (ECF No. 1, at 29). This argument is unsupported by the record. To the contrary, trial counsel adamantly and continuously objected to the admission of Ms. Goldin's testimony based on her lack of expertise. See, e.g., Trial Tr. at 121-28.

state habeas court held that trial counsel's failure was not prejudicial to Sparks. That conclusion was not unreasonable.

The state habeas court explicitly stated: "the testimony of Ms. Goldin in no way factored into the Court's reasoning in this matter." Habeas Tr. at 115. Indeed, it appears that Ms. Goldin's testimony was so lacking in probative value that the trial court did not consider it in making its finding or imposing the sentence – "[t]he evidence of what she said certainly came before the Court, but the Court did not base its rulings in any way on upon that witness or her testimony that was rendered." Id. at 113. Again, to state a claim for relief under Strickland's prejudice prong, Sparks must prove that but for trial counsel's failure to specifically make a relevance objection, there is a reasonable probability that "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Based on a review of the trial transcript, there is no reasonable probability of a different outcome even if trial counsel had raised a relevance objection, or if the court excluded Ms. Goldin's testimony altogether.

As Sparks points out, his admission to the act substantially narrowed the issues to be resolved at trial: penetration and lascivious intent. Despite trial counsel's efforts to persuade the trial court that the Commonwealth had not proven lascivious intent, the trial court relied on the admitted act itself to infer lascivious intent. See Trial Tr. at 194-96. In addition to crediting Mother's testimony over Sparks' on the existence of a rash, the court reasoned that "it is absolutely contrary to any amount of normal human behavior for someone to be engaged in this type of behavior towards a four-year-old child. The act in and of itself is lascivious in nature. It is a genital organ that is being focused on." Id. at 196. The court also cited the victim's indication that Sparks continued licking to support its intent finding. Id. With respect to the penetration element, the court eventually found sufficient evidence to support a finding of penetration based

on additional briefing and its review of Supreme Court of Virginia precedent. Sentencing Tr. at 5-6. Ms. Goldin's testimony, as the state habeas court stated, had no impact on its finding of guilt. Her testimony could not have had an impact because it was not probative of lascivious intent or penetration. To the extent that her testimony affected the court's sentencing considerations, Sparks cannot claim error for trial counsel's objection because sentencing is not necessarily governed by the strict rules of evidence. Va. Sup. Ct. R. 2:1101(c)(1). Likewise, Ms. Goldin's testimony was not unfairly prejudicial to Sparks at trial. Although it may have been excluded upon a proper objection from trial counsel, its admission did not inject prejudice against Sparks such that the objection to her expertise that trial counsel did raise was constitutionally deficient. As the state habeas court observed in rejecting Sparks' claim, Goldin's testimony was marginal in both probative value and prejudice. The state habeas court thus found no constitutional deficiency in trial counsel's representation.

Because the state habeas court concluded that trial counsel's failure to make these proffered objections was not constitutionally deficient, Sparks must show that that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). Sparks has failed to make that showing. The state habeas court's application of Strickland's prejudice prong was not unreasonable. Excluding Ms. Goldin's testimony would not create a reasonable probability of a different outcome. More precisely, trial counsel's raising a different objection to Ms. Goldin's testimony would not create a reasonable probability of a different outcome. As a result, the undersigned recommends that Sparks' second claim for habeas relief be dismissed.

**D. The State Habeas Court's Conclusion that Sentencing Counsel's Failure to Articulate a Different Objection to Sparks' Statements Concerning the 2002 Incident and Expunged Records Was Not Constitutionally Deficient Was Not Contrary to, or an Unreasonable Application of, Clearly Established Federal Law.**

Sparks lastly argues that his sentencing counsel was constitutionally ineffective for failing to raise a different objection to information contained in Sparks' presentence report ("PSR"). Specifically, Sparks argues that sentencing counsel had a duty to object to the inclusion in the PSR of "information about an acquittal" on charges of inappropriate touching of a minor, on the grounds that it was irrelevant and prejudicial. See Pet. at 29 (ECF No. 1, at 31). Sparks' argument is not supported by the record and fails to make the requisite showing of deficient performance or prejudice under Strickland.

First, Sparks argues that sentencing counsel was constitutionally deficient because he failed to "object on grounds of relevance or prejudice." Pet. at 33 (ECF No. 1, at 35). Although he admits that "the mere fact of an acquittal and expungement may be included in a pre-sentence report," Sparks claims that sentencing counsel should have raised both relevance and prejudice objections to the inclusion of statements that Sparks made to Maryland police and the military concerning the incident that led to charges that Sparks was acquitted of in 2002. In fact, sentencing counsel did object: "Based on the fact that he was found not guilty of the offense and based on the fact that it has been expunged by the court order out of Maryland, then I would move to strike all of the information related to this particular charge . . . ." Sentencing Tr. at 16. Like Sparks does now, sentencing counsel conceded that "the sheer fact that there were charges and that they were later expunged" is not objectionable. Id. at 22. Additionally, sentencing counsel proffered to the court a copy of the expungement order and stated that he "looked diligently, and . . . could not find any case specifically from Virginia that addresses what can't be

done with information after expungement." Id. at 26.[10]  Sparks' sentencing counsel argued the objection, albeit without specifically using the words "relevance" or "prejudice," and the court sustained it in part. The court struck from the PSR Sparks' statements to Maryland law enforcement in 2002, but allowed his later statements made to the military concerning the incident. Id. at 26-27. Sparks' argument that sentencing counsel's performance was constitutionally deficient is unpersuasive in light of this record.

Second, Sparks makes an accusation – that the Commonwealth's Attorney and/or probation officer committed a crime in obtaining records from the Navy – that is contradicted by the record. See Pet. at 32 (ECF No. 1, at 34) (citing Va. Code Ann. § 19.2-392.3).[11]  Sparks argues that the "Commonwealth, by its own admission, obtained the expunged file then provided it to the probation department for purposes of preparing a PSI." Id. (citing Sentencing Tr. at 20). However, the July sentencing transcript reveals that the Commonwealth's Attorney made clear: "I didn't obtain it through the police department from any record that had been expunged in Maryland. This was the defendant's statement that was made about why he lost his – why he felt he should not lose his military clearance. I obtained it from NCIS." Sentencing Tr. at 19. Sparks' unsupported argument on this point does not address the Commonwealth's explanation, nor does it state a Strickland claim for relief under § 2254(d).

---

[10] Although Sparks makes an argument from analogous case law, he has not cited any law that specifically addresses the argument that he claims sentencing counsel did not make, but should have made – that an expungement of charges renders information from other sources about the underlying incident inadmissible in a PSR or at sentencing. Again though, sentencing counsel made the argument: "I don't think that the fact that you were able to acquire the documentation from some other place makes it any less expunged. . . . The fact of the matter remains is that he was not found guilty of these charges and the record has been expunged through the court order; so none of this should be admissible for the purpose of the court to consider whether or not this has some bearing on the sentencing event." Sentencing Tr. at 21-22.

[11] The Code of Virginia makes it a Class 1 misdemeanor "for any person having or acquiring access to an expunged court or police record to open or review it or to disclose to another person any information from it without an order from the court which ordered the record expunged." Va. Code Ann. § 19.2-392.3(A) (emphasis added).

Finally, the record reveals no unfair prejudice to Sparks from the inclusion of these statements in the PSR. The state habeas court made it abundantly clear that this information ultimately had no impact on its sentencing decision. As it stated:

> Counsel can speculate as to why the Court did what it did, and that's apparently what they have chosen to do in the petition and indicate that [it] considered things that they want to imply the Court considered, but as a matter of fact, that is just not the case, and that is not so. Their assertions are not supported by the record.

Habeas Tr. at 116. From the court's statements at sentencing and at the habeas hearing, it is evident that the egregious nature of the act itself served as the basis for the sentence the court imposed. See id.; Sentencing Tr. at 82-83 (describing its view that Sparks committed "totally outrageous, virtually unheard of behavior").

Moreover, the state habeas court's holding is underscored by the Virginia rule that "adherence to the Rules of Evidence (other than with respect to privileges) is permissive, not mandatory" in non-capital sentencing not before a jury. Va. Sup. Ct. R. 2:1101(c). The probability that a relevance or prejudice objection would have altered the outcome does not rise to the level of reasonable. Strickland, 466 U.S. at 694. Moreover, sentencing counsel's failure to articulate a different, specific objection in a proceeding where the Virginia Rules of Evidence do not necessarily apply does not fall below an objective standard of reasonableness. Id. at 687. In sum, petitioner fails to carry his burden to show that the state habeas court's adjudication of these claims were contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts.

### III. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that that Respondent's Motion to Dismiss (ECF No. 4) be GRANTED, and that Sparks' petition for a writ of habeas corpus under 28 U.S.C. § 2254 be DENIED and the claims DISMISSED with prejudice.

## IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.     Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.     A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk shall mail a copy of this Order to the petitioner and to counsel of record for the respondent.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
December 12, 2014